1

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF KENTUCKY
 2                   NORTHERN DIVISION at COVINGTON
                                - - -
 3
      JEFF RIECK,                    : Docket No. 19-cv-92
 4                                   :
                         Plaintiff,  : Covington, Kentucky
 5                                   : Thursday, June 11, 2020
                                     : 1:00 p.m.
 6    versus                         :
                                     :
 7    HOUSING AUTHORITY OF           :
      COVINGTON, et al.,             :
 8                                   :
                         Defendant.  :
 9
                                - - -
10          TRANSCRIPT OF TELEPHONIC ORAL ARGUMENT
                 BEFORE WILLIAM O. BERTELSMAN
11            UNITED STATES DISTRICT COURT JUDGE
                                - - -
12
      APPEARANCES:
13
      For the Plaintiff:            DAVID TORCHIA, ESQ.
14                                  Tobias, Torchia & Simon
                                    414 Walnut Street
15                                  911 Mercantile Library Building
                                    Cincinnati, OH 45202
16
      For the Defendant,           LOREN TELLER PRIZANT, ESQ.
17    Stephen McMurtry:            Middleton & Reutlinger
                                    401 S. Fourth Street
18                                  2600 Brown & Williamson Tower
                                    Louisville, KY 40202
19
      For the Defendants,Housing   DERRICK T. WRIGHT, ESQ.
20    Authority of Covington:      Sturgill Turner Barker & Moloney
                                    333 West Vine St., Suite 1500
21                                  Lexington, KY 40507

22    Court Reporter:              LISA REED WIESMAN, RDR-CRR
                                    Official Court Reporter
23                                  35 W. Fifth Street
                                    Covington, KY 41011
24                                  (859) 291-4410

25         Proceedings recorded by mechanical stenography,
      transcript produced by computer.
```

2

1          (Proceedings commenced at 12:57 p.m.)

2               THE COURT:  This is Judge Bertelsman.  If we can get

3     a roll call of who's on the call.

4               MR. TORCHIA:  For the plaintiff, this is Dave

5     Torchia.

6               THE COURT:  All right.  Who else?

7               MR. PRIZANT:  Judge, Loren Prizant on behalf of the

8     defendant, Steve McMurtry.

9               MR. WRIGHT:  Your Honor, Derrick Wright on behalf of

10    the defendant, Housing Authority.

11              THE COURT:  Okay.  Three of you, is that all?  Is

12    that all the attorneys are on, the three of you?

13              MS. ROGERS:  Yes, Judge.

14              THE COURT:  Okay.  Well, we've got a case involving

15    local politics here, which is always fairly complex with a lot

16    of things going on and a lot of (audio gap).

17         In the long distant past, I represented the City of

18    Highland Heights as city attorney.  I think there were more

19    politics in the City of Highland Heights than in the City of

20    New York.

21         But anyway, let's go through this, and we'll make what

22    rulings we can.  And then if it isn't all dismissed, we'll set

23    some guidelines for the future.

24         So we have several motions.  The first one, I guess, is

25    Mr. McMurtry's motion to dismiss.  So let me hear you on that

3

1    first.  That's the simplest one, I guess.

2         MR. PRIZANT:  Thank you, Judge.  Again, this is Loren

3    Prizant on behalf of Mr. McMurtry.

4         As you said, we're here today on the motion we have

5    pending and Mr. McMurtry's motion to dismiss the two counts

6    contained in the Complaint that are filed against him.

7         Specifically, we're asking the Court to dismiss both

8    plaintiff's interference with prospective employment claim and

9    his defamation claim.  And so while I'm sure the Court has had

10   an opportunity to review the parties' filings, I believe it's

11   important to just highlight a few of the facts in the

12   Complaint and what this case is about.

13        So the claims against my client, Mr. McMurtry, all stem

14   from comments attributed to Mr. McMurtry which are contained

15   in a newspaper article regarding plaintiff's separation or the

16   board's actions to start his separation that were published in

17   the River City News.

18        So, again, the plaintiff alleges and believes that these

19   few comments attributed to Mr. McMurtry are quotes -- are

20   purported quotes in the newspaper article that constitute some

21   sort interference with prospective employment and defamation.

22        But under *Iqbal* and *Twombly*, even taking all those

23   allegations as true, the Complaint, we contend, failed to

24   state any claim against Mr. McMurtry that can legitimately be

25   granted.

1      There are really many reasons why.  First, we believe

2 Mr. McMurtry is entitled to immunity.  Even if he's not

3 entitled to immunity, the plaintiff hasn't pled sufficient

4 facts to establish interference of prospective employment.  He

5 only speculates that the potential employers who he's had to

6 apply to now that he's been terminated won't hire him because

7 of Mr. McMurtry's comments in the article.

8      THE COURT:  The immunity you're talking about, as I

9 understand it, is the immunity the state has for public

10 employees.  It's not a federal immunity; is that right?

11      MR. PRIZANT:  That is correct.

12      THE COURT:  All right.  And as I understand that law,

13 which hasn't always been clear, but I think I've come to

14 understand it, if the state employee acts in a discretionary

15 manner, he has immunity.  It's different than the federal test

16 for immunity.  If he acts in a ministerial manner, he would

17 have not have immunity.

18      The way I would look at it, if someone were to decide,

19 state employee of a mayor -- of a (indiscernible) decides he's

20 going to take (indiscernible) Lexington and he drove down to

21 Lexington and had an accident on the way because he was in the

22 wrong place at the wrong time, that would be discretionary,

23 and he would have immunity.

24      But if, on the way to Lexington, he didn't obey the

25 traffic laws and had an accident because he wasn't obeying the

1    traffic laws, that would not be discretionary and he wouldn't

2    have immunity.

3        Is that correct?  Is that pretty much it?

4            MR. PRIZANT:  I believe you've stated that

5    accurately, Your Honor.

6            THE COURT:  Took me a while to understand it when

7    they first came out with it because it's nothing like the

8    federal immunity.

9        Okay.  Well, then, turning to Mr. McMurtry's statement,

10   did the board -- I don't know if it's in the pleadings, but

11   did the board give him a statement that he was just supposed

12   to read, or did he compose the statement himself?

13           MR. PRIZANT:  So, no, I don't believe there is

14   anything that he was to read.  It's definitely not in the

15   Complaint.  What I believe it is is just a reporter asked him

16   questions, and he answered.  So he was being asked questions

17   as the lawyer for the board and answered on what the board had

18   done.

19           THE COURT:  Okay.  Well, if that's the case, it would

20   be discretionary.

21       Let me hear the plaintiff on that, make sure I'm

22   understanding the arguments.  What's the plaintiff got to say

23   about that?  If he made this statement himself, wouldn't it be

24   discretionary under state law?

25           MR. TORCHIA:  Judge, I think it's a question that

1    needs to be explored because there's nothing in the Complaint

2    about what authority or what Mr. McMurtry was told to say or

3    what not to say.

4         And the case, the primary case that the defendants cited

5    in their reply memo, *Haney v. Monsky*, points out that this is

6    a -- whether it's discretionatory *[sic]* or whether it's

7    ministerial is a very fact intensive analysis that's really

8    not appropriate for summary judgment, let alone a motion to

9    dismiss.

10        And I understand Mr. McMurtry's argument, but I think

11   it's way too early in this case to start talking about facts

12   that aren't in the Complaint and certainly aren't in the

13   record and make a determination about whether it was

14   discretionatory -- discretionary or whether it was

15   ministerial.

16             THE COURT:  (Indiscernible) the proceedings had been

17   started, at least, to terminate the plaintiff's employment,

18   and that part was true, wasn't it?

19             MR. TORCHIA:  Well --

20             THE COURT:  Or else he wouldn't be here in the rest

21   of the case.

22             MR. TORCHIA:  Well, they had started the proceedings,

23   but Mr. Rieck had been suspended at that point in time.  He

24   had not been terminated for cause, as shows up in the article.

25   He hadn't had the chance to contest these statements that show

1    up in the proposed suspension resolution.

2        So again, we're getting into a lot of factual disputes

3    and fact intensive inquiries that need to be explored during

4    discovery, not determined from the face of the Complaint.

5            THE COURT:  Well, it probably does need to have some

6    facts developed.  But I would observe, as I understand the

7    law, if they said, "You make a statement about this" and then

8    he composed this, that would be discretionary under state law,

9    and you wouldn't have a case.

10       If they handed him something to read that they composed

11   and he read it to the reporter, I'm not too sure what that

12   would be.

13       I think perhaps you're right that we need to do some

14   discovery on that issue.  I think it's clear that state

15   actors, whether they're professional or whether they're

16   employees, I think are entitled to qualified immunity that's

17   different -- if the facts support it, that's different than

18   the federal immunities so it's easy to get them confused.

19       I understand if he used discretion in what to say, he

20   would be immune under state law.  I don't think there's a

21   federal claim against him, is there?

22           MR. TORCHIA:  No, not yet, Judge.  But on that point,

23   a couple things, if I may.  Number one is defendant's argument

24   assumes that Mr. McMurtry was an employee or an officer of the

25   state agency, and I think, again, it's premature to reach that

1    conclusion.

2         THE COURT:  Retained as their attorney.

3         MR. TORCHIA:  Right.

4         THE COURT:  It's very common, at least in Kentucky,

5    that if an agency or a small city, even, can't afford to hire

6    a full-time attorney, they'll hire somebody in private

7    practice to be city attorney.  I think I mentioned I was city

8    attorney of the City of Highland Heights.

9        I know even Ft. Thomas is not big enough to have an

10   attorney on staff.  They have somebody who is in practice

11   they've hired a city attorney.  Covington might have their own

12   legal staff.  I think they do.

13        MR. TORCHIA:  I think they have a solicitor's office.

14        THE COURT:  I would think one of these people who is

15   retained, who is in practice and is retained to act for a city

16   or municipal board would have the status of public official.

17        MR. TORCHIA:  Judge, even beyond that, in order to

18   have immunity, there's a whole 'nother calculation of whether

19   Mr. McMurtry would have acted in good faith or not, which,

20   again, is something that is not ripe on a motion to dismiss.

21        THE COURT:  Okay.  Well, perhaps you're right about

22   that.

23        Somebody want to be heard further?

24        MR. PRIZANT:  Your Honor, again, this is Loren

25   Prizant.  I guess I don't believe we need more facts.  Again,

1    this is not a motion for summary.  It's a motion to dismiss

2    based on the facts alleged in the Complaint.  And the

3    Complaint alleges that Mr. McMurtry spoke to the newspaper and

4    the newspaper quoted him as saying certain things.

5        In ruling on a motion to dismiss, I believe you're able

6    to look outside of the Complaint if I've attached, as we did,

7    the actual article that's referred to in the Complaint.

8        In that article, it doesn't say he's reading from a

9    statement or quoting a statement.  It gives four very small

10   quotes from him.  And in those, I think as you were hitting

11   the nail exactly on the head, even if there's not immunity and

12   there's those issues concerning the defamation portion, the

13   newspaper article says that the HAC board gave Rieck notice

14   that they intended to terminate him based on certain issues

15   and that he has a right to certain due process proceedings,

16   and they were offering him those.  And then it says, "Said

17   attorney Stephen McMurtry, who represents the board."

18           THE COURT:  Talks about he didn't make reports on

19   time and that sort of thing, and I think the plaintiff's

20   contention is he was terminated for political reasons, if you

21   want to call them that, or policy reasons.  He disagreed with

22   the board on what they wanted to do and made vociferous

23   objections about it.

24           MR. PRIZANT:  And I have --

25           (Indiscernible crosstalk.)

1      THE COURT:  -- right now, I think you could do a wave

2  of discovery just on that and then renew it, rather than have

3  to sit through all the rest of the discovery.

4      MR. PRIZANT:  And I do get that, Your Honor, but I

5  guess I just would like to raise one little distinction that I

6  see, and then it's possible that the Court disagrees with me.

7  Courts disagree with me a lot, unfortunately.

8    But Mr. McMurtry's quotes said this is what the board

9  did.  This was what the board told plaintiff.  These are the

10  reasons the board gave.  So even if Mr. McMurtry --

11      THE COURT:  According to the rest of the case, it was

12  more of a policy difference about what should be done with a

13  certain housing project, wasn't it, and other policy reasons?

14      MR. PRIZANT:  I guess what I'm saying is Mr. McMurtry

15  was explaining to the reporter what the board's resolution

16  said and the document attached to the resolution.  What the --

17      THE COURT:  Well --

18    (Indiscernible crosstalk.)

19      MR. PRIZANT:  -- everything he attributed to have

20  said is accurate and exactly what the board did.  Now, maybe

21  when the board says, He didn't bring something to my

22  attention, plaintiff may say, I did bring it to their

23  attention.  So there could be a dispute, did it happen or not,

24  but there can't be a dispute that it's true that the board

25  listed it as the reason for his termination --

1      (Indiscernible crosstalk.)

2          THE COURT:  -- premature.  Assuming some of these

3      other claims survive, we could do a separate wave of discovery

4      just on this issue so he doesn't have to sit through all of

5      it.

6          But for right now, I think it would be premature to grant

7      the immunity until we have more facts in evidence of exactly

8      how he determined exactly what he was going to say; was he

9      given a statement to read, or did he make it up himself?

10         That's going to be my ruling.  I'm going to defer until

11     we do some discovery on that issue.

12         Then we move on to the even more difficult issues.  So he

13     was terminated.  There was a huge -- as I'm reading this, and

14     I know there is no deposition, so by reading the Complaint, et

15     cetera, it said there was a huge policy difference between the

16     plaintiff and the board about certain matters.  And

17     ultimately, he was terminated as a result of that, although

18     there's other stuff in there too.

19         So what would the plaintiff's proof be on this, leaving

20     Mr. McMurtry out of it for the time being?  What would the

21     proof be?  He was the whatever -- these positions are very

22     common in cities and courts.  We have a clerk of court who is

23     not a judge, is appointed by the judges.  Cities have city

24     managers that are either full- or part-time that are appointed

25     by the council but not elected.

1          This is a very common situation if somebody is appointed

2     by a board and working for the board.  So what will the proof

3     be on why -- the plaintiff's proof be on why he was

4     terminated?

5               MR. TORCHIA:  Judge, the proof will be that from --

6               THE COURT:  What's the --

7               MR. TORCHIA: -- the time --

8               THE COURT:  -- allegation of why he was terminated?

9               MR. TORCHIA:  The primary allegation is that he was

10    terminated in retaliation for exercising his First Amendment

11    rights about these various disagreements that he had with the

12    mayor and other members of the commission that culminated in

13    legal action.

14         Mr. Rieck was trying to operate this agency within the

15    confines of the law, following the Kentucky regulations.  He

16    was trying to have the board comprised of the correct way with

17    the proper number of political parties represented.

18         He also objected to the fact that the mayor was elected

19    as the chair of the board without -- with people on the board

20    who may not have had any authority to even participate in that

21    election because of other issues concerning the appropriate

22    makeup of the board.

23         So as you put it, Judge, there's a lot of political

24    issues going on.  The plaintiff was trying to do things in

25    accordance with the law, and he was let go.  There's some good

1    timing here.  He was let go shortly after this all came to a

2    head when a lawsuit was filed.

3         And there's also evidence of a lot of hostility from the

4    mayor toward Mr. Rieck at various board meetings.

5              THE COURT:  Here's what you're going to run into when

6    you get into that.  I just had one of these cases.  An

7    employee who is fired and is invoking the First Amendment has

8    to show that he was fired for speaking as a citizen and not

9    for speaking as an employee.

10        The leading Supreme Court case, I don't remember the name

11   of it, but it involved a teacher, I think, who went before the

12   Board of Education and spoke against a bond issue that her

13   board was in favor of.

14        And the holding of the Court, as I recall, is that she

15   was speaking as a citizen and, therefore, it was -- she was

16   protected.  But if an employee, say, making a complaint about

17   the hours are too long or whatever it might be as an employee

18   or even the presence of objectionable statues or pictures in

19   the workplace, if you're speaking as an employee, you're not

20   protected.  You've got to show you're speaking as a citizen,

21   you'll find out when you get to researching here.

22        This has been alleged specifically in here.  But from

23   what you're saying, it sounds more like he was speaking as an

24   employee.

25             MR. TORCHIA:  Well, he was speaking, Judge -- there's

1    authority in the Sixth Circuit that says even when an employee

2    is speaking to enforce the law and to have his agency comply

3    with the law, that deserves First Amendment protection.  I

4    understand the case that you're talking about.  I believe it's

5    *Pickering*, the case you're --

6              THE COURT:  I think I just had one involving, I

7    think, a sheriff.  I have a lot of cases.  It could have been

8    another one.

9         What would your proof be that he was speaking as a

10   citizen, as far as you know now?  I know you can't know all

11   your proof yet.

12             MR. TORCHIA:  Well, just because -- well, he is --

13   just because he's talking about housing issues doesn't mean

14   that he's not speaking as a citizen.  These things came up in

15   his employment, but there were differences of opinion between

16   he and Mayor Meyer about the mission of what public housing

17   should be in the City of Covington.  There were disagreements

18   about whether or not people should be -- certain properties

19   should be sold or eliminated, where residents should go and

20   where they shouldn't go.

21        I mean, these are the kinds of disputes that kind of

22   culminated in this big disagreement between Mr. Rieck and the

23   mayor and some of the board members.

24             THE COURT:  Well, let me hear from the defendant on

25   that before I rule on this.  This would be the city, I guess.

1          MR. WRIGHT:  Yes, Your Honor.  Derrick Wright on

2     behalf of the Authority.

3          THE COURT:  Go ahead.

4          MR. WRIGHT:  Your Honor, I think that you point out a

5     viable distinction between speaking as an employee or speaking

6     as a citizen.

7          Another distinction that I've come across in the free

8     speech is at a certain point, people occupy positions that are

9     policymaking positions.  And when there's disagreements over

10    policy, the First Amendment doesn't apply.  People at the top

11    are entitled to have people on the same page policy-wise.  I

12    think we've had this litigated with mayors and chiefs of

13    police, very high ranking people.

14         Mr. Rieck follows in that as the executive director.  So

15    if there's policy disputes, I don't really think that that, at

16    the end of the day, that will be a First Amendment claim.

17         There's the hurdle of the employee versus citizen.  But

18    if he's going to say it's employee, I think then we fall into

19    the policymaker issue.

20         And then the last thing I'll say is at the end of the

21    day, I don't think they're going to prove causation.  I know

22    that they allege that, that that will be their goal, but we

23    will have evidence that there were other reasons why he was

24    let go that were in that resolution; that he was not

25    cooperating on budgeting issues, finance issues, the finance

1    department was in disarray and was not being fixed.

2        I know, from timing, they will try to say, well, it had

3    to do with these policy disputes, but we think the proof will

4    show otherwise.

5            THE COURT:  Okay.  Anybody else want to be heard on

6    these issues?  I think I've covered all the issues.

7            MR. TORCHIA:  Judge, it's Dave Torchia --

8            THE COURT:  Pardon me?

9            MR. PRIZANT:  This is Loren Prizant, Judge.  If I

10   could have a brief minute to kind of -- I understand where you

11   are on the immunity portion.

12       And while the first argument sort of would take

13   everything away, I don't believe that argument is even as

14   strong as our issue that, as Mr. Wright just said, there are

15   all these reasons in the resolution that they have raised to

16   terminate him, and Mr. McMurtry only told the newspaper, This

17   is what the resolution said.

18       So, again, I guess on the defamation, (indiscernible)

19   that the truth is the ultimate defense because he didn't say

20   he was fired -- you know, that he did things.  He said the

21   board based their decision on these lists of items.

22           THE COURT:  He still had a right to a hearing, I

23   think, at that point, didn't he?

24           MR. PRIZANT:  Right.  And that's one of his quotes.

25   He says, quote, that he has a right to certain due process

1    proceedings and they were offering him those.

2        On the interference with prospective employment, you

3    know, there's many elements that Mr. Wright just can't meet.

4    You've got to have an existence of a valid business

5    expectancy.  And you just said, at the time, he has the right

6    to due process, which we said.  So he wasn't even -- there

7    weren't any prospective employment opportunities on the

8    horizon because he --

9            THE COURT:  I agree with that.  I was getting to

10   that.  The count in there about interference with employment I

11   don't think is well taken.  I think that would require he had

12   applied for a job and you sought out the prospective employer

13   and told false things about him.

14       At this point, he hadn't even left this job yet so I will

15   grant the motion to dismiss on that count.  I don't think

16   it's -- there's no allegation in the Complaint that he even

17   had a prospective employer at that point, much less that they

18   sought one out to interfere with his getting a job.

19       So I will sustain that.

20       I think there are issues of fact on these other two

21   counts; namely, concerning Mr. McMurtry, and then on the

22   reasons why he was fired was clearly he had disagreements with

23   the board.  Were they as a citizen or were they as a member of

24   the board -- as somebody who worked for the board in his job

25   capacity.  I think that's going to be the main issue.

1          Okay.  Anything else we need to rule on at this time?

2          MR. TORCHIA:  Judge, it's Dave Torchia for the record

3     and the court reporter.

4          There was no motion addressing the First Amendment claim

5     that's pending.  I understand you've given your views on it

6     and the lawyers have given their views on it, but the only

7     motion addressing -- the only motion at issue at this point in

8     time addresses just the claims against Mr. McMurtry for

9     interference and defamation.

10          THE COURT:  Well, the briefs certainly go into a lot

11     of detail about all this.

12          MR. TORCHIA:  Well, the --

13          THE COURT:  There are issues of --

14          (Indiscernible crosstalk.)

15          THE COURT:  -- if it hasn't been raised.  I saw some

16     references in there to the First Amendment, I think.  I've

17     been reading the briefs all morning.  Anyway, I think there

18     are issues in regard to that.

19          But on the issue of did they interfere with employment, I

20     don't think there's any issues.  They hadn't gotten that far

21     that they were going to be making references.  He hadn't even

22     been -- the decision to fire him hadn't even been made final

23     yet.

24          So given all that, while we're here, we might as well do

25     a 56(f) conference.  How much time does the plaintiff think

1    you need for discovery?

2         MR. TORCHIA:  Judge, I just think the way things are

3    going, probably until at least the end of the year and more

4    likely the first quarter of 2021.

5         THE COURT:  That's almost a year.  Of course, it is

6    complex.  Why don't we just make it the end of the year, say

7    January 10, so you don't have to work over the holidays.

8    We'll do the 15th.  January 15 will be the discovery deadline,

9    30 days after for summary judgments.

10        As to the claim against Mr. McMurtry, I'll set that as a

11   separate wave.  You can do that in 30 days to see where the --

12   what he told the press, where it came from.  Did he make it

13   up, or did the other make it up.  And then you can just file

14   short briefs on what that discovery shows.  Think that will

15   work?

16        MR. PRIZANT:  I believe that will work, Your Honor.

17   This is Loren Prizant for the record and the court reporter.

18        THE COURT:  Okay.  Well, I don't imagine there's any

19   point at this -- do any good at this point to discuss

20   settlement, but I always discuss it if it's possible to

21   settle.  Perhaps it can be settled.

22        Has the plaintiff found other employment?

23        MR. TORCHIA:  He has, Judge.  And we did, before this

24   lawsuit was filed, we did have a private mediation that was

25   required under the terms of Mr. Reick's employment contract,

20

1    and I think we made some good progress.  We didn't resolve the

2    case, but I think progress was made, and I wouldn't rule

3    out -- I mean, I wouldn't close the door to further

4    discussions if they wanted to --

5              THE COURT:  Stop and think that we've been talking

6    about this for a half an hour now.  The discovery is going to

7    be extremely expensive.  You'll have to depose the whole

8    board, you'll have to depose all the employees.  So if you can

9    settle before you've got to do all that discovery, that's

10   going to cost money to both sides.  Some of it can't be

11   recouped, even if the plaintiff wins.  I would think that you

12   would give serious thought to settling this.

13        Besides that, it's going to get awful nasty, I get the

14   feeling, as I read all this this morning.

15        Anyway, that will be the order of the Court.

16        Any questions?

17             MR. TORCHIA:  No, Your Honor.  None from the

18   plaintiff.

19             THE COURT:  You've all been very well prepared.  I

20   appreciate it.  Thank you.

21             MR. PRIZANT:  Thank you very much, Judge.

22             MR. WRIGHT:  Thank you, Your Honor.

23        (Proceedings concluded at 1:27 p.m.)

24                          - - -

25

1                    C E R T I F I C A T E

2            I, LISA REED WIESMAN RDR-CRR, certify that the
      foregoing is a correct transcript from the record of
3     proceedings in the above-entitled case.

4

5     _/s/ Lisa Reed Wiesman_              ___June 17, 2020___
      LISA REED WIESMAN, RDR-CRR          Date of Certification
6     Official Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25