IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2:19-CV-0092 (WOB-CJS)

JEFF RIECK.                                                    PLAINTIFF,

VS.                    **MEMORANDUM OPINION AND ORDER**

HOUSING AUTHORITY OF COVINGTON, ET AL.,                        DEFENDANTS.

Jeff Rieck filed this civil action against the Housing Authority of Covington, the Board of Commissioners for the Housing Authority of Covington, Joseph Meyer, Shawn Masters, Jennifer Holt, Jennifer Rawers, and Stephen McMurtry following his termination in 2018. (Docs. 1, 17).

This matter is currently before the Court on McMurtry's motion for summary judgment as to Rieck's defamation claim. (Doc. 38). The Housing Authority of Covington ("HAC") joins McMurtry's limited request. (Doc. 41).

The Court previously held a telephonic hearing on this motion on Tuesday, March 30, 2021. (Doc. 55). The issues being ripe, the Court now issues the following Memorandum Opinion and Order.

*Introduction*

In this unusual libel case, the executive director of a municipal housing agency is suing its attorney for defamation. As stated in more detail below, the attorney answered questions from

1

a newspaper reporter concerning a resolution by the agency's board of directors stating its intention to discharge the plaintiff.

The criteria for analyzing a libel claim has grown somewhat complicated in recent decades as a result of certain Supreme Court decisions mandating the use of different criteria for differently situated plaintiffs.

At common law, which prevailed in Kentucky until 1964 any individual who could prove the defendant had made or published derogatory written statements about him could recover in a libel action. However, in the interest of protecting the constitutional right of freedom of speech, the Supreme Court has mandated different standards for different kinds of plaintiffs. *See generally* 13 Ky. Prac. Tort Law § 15:13 (2020).

For example, a public official must prove that the libelous statement(s) were made with "actual malice," which refers to a defendant's knowledge of a deliberate falsehood or a statement made "with reckless disregard as to truth or falsity." *New York Times Co. v. Sullivan*, 376 U.S. 254, 283 (1964); *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 688 (1989). The same is true of "public figures," who can be a well-known person in the community, like a celebrity, or someone who attains the status of a public figure only for a limited purpose because they thrust

2

themselves to the forefront of a public controversy. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974).[1]

Sometimes, it is difficult to classify a libel plaintiff. For example, it is not clear whether the plaintiff here is a "public official." *See Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966) (explaining that that a public official is someone who is "among the hierarch of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs").

However, it is unnecessary for the Court to undertake this kind of analysis because "truth" is a defense in all kinds of defamation actions. 13 Ky. Prac. Tort Law § 15:6 (2020).

As explained *infra,* the Court holds that in this case the defendant stated the truth when he told a reporter the contents of a resolution by the agency's board of directors stating an intent to discharge the plaintiff.

### *Factual and Procedural Background*

Rieck is the former Executive Director of the Housing Authority of Covington, serving from June 16, 2014 until he was terminated on September 19, 2018. (Doc. 17 at ¶ 4). Rieck was

---

[1] Because public figures assume the risk of closer public scrutiny than private individuals, and because public figures enjoy greater access to the media to effectively rebut any false statements made about them, public figure must establish "actual malice." *Gertz*, 418 U.S. at 345.

3

employed by HAC pursuant to a five-year Employment Agreement that began on June 16, 2014 and was set to end on June 15, 2019. (*Id.* at ¶ 9). His tenure began when Sherry Carran was the Mayor of Covington. (*Id.* at ¶ 12). But in November of 2016, Joseph Meyer beat Carran in the general election to become the new Mayor of Covington. (*Id.* at ¶ 13). Then, like any change of administrations, a new vision for the City of Covington was put forth by Meyer. And with this change came tensions.

Rieck's tension with Meyer began in January of 2017, when Meyer told Rieck to "stop filling the units at City Heights" because "in eighteen months they [would] all be gone." (*Id.* at ¶ 14). At a February 2018 Board meeting, Rieck expressed his displeasure about Meyer's comment and other policy choices. (*Id.* at ¶ 15). Then on March 21, 2018, a letter was read at the Board meeting to express similar frustration by some of the staff. (*Id.* at ¶ 17).

The conflicts continued into April of 2018. This time a disagreement arose when Meyers recommended that Shawn Masters fill a vacancy on the HAC Board. (*Id.* at ¶ 23). Rieck believed this appointment compromised the legality of the Board because KRS ¶ 80.040(2)(a) provides that "no more than two (2) appointees on any city housing authority shall be affiliated with the same political party." And with Masters' appointment, the Board now comprised of

4

three Democrats (Commissioners Jennifer Allen, Jennifer Holt, and Masters). (*Id.* at ¶¶ 22-23).

When this issue was addressed at the May 16, 2018 Board meeting, Commissioner Holt informed the Board that she was changing her party affiliation to "Independent." (*Id.* at ¶ 25). While this created compliance with the statute, Rieck still believed this did not cure Masters' appointment. (*Id.*) Nevertheless, the Board proceeded with a vote to elect Meyer as the Chair and Masters as the Vice-Chair. (*Id.* at ¶ 26).

After Rieck continued to challenge various decisions of the Board, Meyer and the HAC Board of Commissioners passed a resolution to suspend Rieck without pay and provide him with notice of their intent to terminate on July 18, 2018. (*Id.* at ¶¶ 27, 30).

On July 19, 2018, an article appeared in the River City News concerning the Board's decision. (Doc. 38-6). This article purportedly surfaced following a reporter speaking to the Board's General Counsel, Stephen McMurtry. (*Id.*) On September 19, 2018, HAC passed a resolution to officially terminate Rieck's employment. (*Id.* at ¶ 34).

On July 17, 2019, Rieck filed his original complaint against the defendants asserting three claims: (1) First Amendment retaliation; (2) interference with prospective employment; and (3) defamation. (Doc. 1 at 8-10). On November 19, 2019, Rieck filed an

5

amended complaint to add a claim for breach of contract in count IV. (Doc. 17 at 10-11).

On December 6, 2019, McMurtry filed a motion to dismiss the interference with a prospective employment and defamation claims against him. (Doc. 18). The remaining defendants filed their answer on December 9, 2019, and HAC moved for partial judgment on the pleadings concerning Rieck's claim for vicarious liability concerning McMurtry's statements to the media. (Doc. 21).

This Court held oral argument for McMurtry and HAC's motions on June 11, 2020. (Doc. 32). At the hearing, the Court granted the defendants' motions in part and denied in part. (*Id.* at 1-2). Specifically, the Court granted the defendants' request to dismiss Rieck's interference with prospective employment claim but allowed Rieck's defamation claim to proceed. (Doc. 33 at 17:20-25).

Following limited discovery on the defamation issue, McMurtry moves for summary judgment on the defamation claim only.[2] (Doc. 38). HAC joins McMurtry's motion, arguing that since Rieck's defamation claim is premised on a theory of vicarious liability, it cannot be liable if McMurtry's statements were not defamatory. (Doc. 41 at 1).

---

[2] The claims of retaliation and breach of contract are still pending. On December 31, 2020, Magistrate Judge Smith granted the parties' request to extend the discovery deadline for these matters to April 15, 2021, with dispositive motions to be filed by May 17, 2021. (Doc. 50).

6

### *Standard of Review*

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While the Court views the evidence in the light most favorable to the nonmoving party, the nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### *Analysis*

In Kentucky, a cognizable claim for defamation requires plaintiffs to prove the following elements:

(a) A false and defamatory statement concerning another;
(b) An unprivileged publication to a third party;
(c) Fault amounting at least to negligence on the part of the publisher; and
(d) Either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014) (internal footnote omitted) (quoting Restatement (Second) of Torts § 558) (Am. Law Inst. 1977)).

At issue here is the first element: whether McMurtry's statements were true. McMurtry argues his statements were true because he merely provided the reporter with the Board's reasons for passing the resolution of its intent to terminate Rieck. (Doc. 38 at 8-10).

7

Rieck contends that McMurtry did not cite the resolutions or attribute the statements to the Board, but he instead made the statements of fact about Rieck that portrayed him as an uncooperative and insubordinate employee who failed to do his job. (Doc. 44 at 12).

"Defamatory language" is broadly construed as language that "tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004), *overruled on other grounds by Toler*, 458 S.W.3d at 287. "[T]he words of the publication should not be considered in isolation, but rather within the context of the entire [publication] and the thoughts that the [publication] through its structural implications and connotations is calculated to convey the reader to whom it is addressed." *Connaughton v. Harte-Hanks Communications, Inc.*, 842 F.2d 825, 840 (6th Cir. 1988), *aff'd*, 491 U.S. 657 (1989).

But it has long been recognized that the truth of alleged statements by a defendant is "always a complete defense . . .." *Pennington v. Little*, 99 S.W.2d 776, 777 (Ky. 1936). Thus, a defendant who can prove the truth of the alleged defamatory statement cannot be liable for slander. *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 273 (Ky. Ct. App. 1981).

A review of McMurtry's statements together show that his statements were true. To be sure, on July 18, 2018, the Board passed a resolution of its intent to terminate Rieck. (Doc. 38-8). A copy of this resolution, along with a letter detailing the Board's reasons for pursing Rieck's termination, was sent to Rieck the same day. (*Id.*)

Then, without warning or request, a reporter from the River City News called McMurtry to inquire about the Board's July 18 resolution. (Doc. 38-6). McMurtry explained that the Board gave Rieck "notice that they intended to terminate him based on certain issues and that he had the right to certain due process proceedings[,] and they were offering him those[.]" (*Id.*) Rieck concedes this statement is true.

The article went on to explain that "[t]hose proceedings available to Rieck included a pre-termination hearing and a right to severance pay if dismissed without cause." (*Id.*) But, McMurtry clarified that the Board's "dismissal was with cause" not for a "single cause . . . rather 'a long list.'" (*Id.*) McMurtry even provided examples of some of the Board's reasons, including Rieck's alleged "failures to cooperate with the board, to bring certain items to the board's attention, to deliver reports, [and] to provide discussions to the board." (*Id.*) McMurtry explained that "[i]t's nothing that is really outstanding or anything that shows

9

in anyway any moral turpitude, but it was just that the job was not getting done." (*Id.*)

Rieck concedes that the Board sent him its resolution and provided him with a list of twelve reasons for seeking his termination. Nevertheless, Rieck asks the Court to look narrowly at McMurtry's statements to find that they insinuated that Rieck was already terminated with cause before his due process hearing. This is not so.

First, the context of McMurtry's statement reveals that he is discussing the Board's reasons provided to Rieck in his letter. Again, Rieck does not contest that McMurtry told the reporter that the Board gave Rieck "notice that they ***intended*** to terminate him based on certain issues[.]" (Doc. 38-6) (emphasis added). And after providing this context, the reporter wrote "[t]hose proceedings available to Rieck included a pre-termination hearing and a right to severance pay if dismissed without cause." (*Id.*) At this point, McMurtry informed the reporter that the Board was seeking dismissal with cause because of a long list of reasons. (*Id.*) Thus, this shows that McMurtry was discussing what the Board had done and why the Board had done it.

Second, Rieck concedes that the Board passed a resolution to terminate him with cause (for the listed reasons provided to him) on September 19, 2018, after he waived his right to a due process

10

hearing. Therefore, McMurtry and HAC are entitled to judgment as a matter of law because McMurtry's statements were true.[3]

Thus, having reviewed this matter, and the Court being advised,

IT IS ORDERED that McMurtry's motion for summary judgment (Doc. 38) be, and is hereby, **GRANTED**.[4]

This 1st day of April 2021.



Signed By:
*William O. Bertelsman* WOB
United States District Judge

---

[3] Because McMurtry's statements were substantially true, this Court need not address McMurtry's constitutional arguments. *See Jean v. Nelson*, 472 U.S. 846, 854 (1985) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981) ("Prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decisions")).

[4] Count III of Rieck's amended complaint provides "[t]o the extent Defendant McMurtry was acting in the scope of his agency and representation, Defendant HAC is also liable for his conduct. (Doc. 17 at ¶ 42). As explained in HAC's response joining McMurtry's motion for summary judgment, (Doc. 41), because Rieck's defamation claim against it is derivative, it fails for the same reasons. Therefore, HAC is likewise entitled to judgment as a matter of law on Count III.

11